**Myron T. FLEMING**

**v.**

**Joseph CALIFANO, Jr., Secretary of Health, Education and Welfare.**

**Civ. A. No. 78-4332.**

United States District Court, E. D. Pennsylvania.

Jan. 11, 1980.

[redacted]

Ralph M. Evans, Philadelphia, Pa., for plaintiff.

Alexander Ewing, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

POLLAK, District Judge.

This action was brought under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. Plaintiff challenges the decision of the Administrative Law Judge, which became final after review was denied by the Appeals Council, in regard to the following determinations: (1) that plaintiff had received a total of $1,453.30 in retirement insurance overpayments for February, March, April and June, 1976, and that he was not entitled to receive payments in 1977, because he had rendered substantial services as a highly skilled professional consultant; and (2) that recoupment from the plaintiff would not defeat the purposes of the Act, nor be against equity and good conscience. Both sides have moved for summary judgment.

### I

Myron Fleming became entitled to retirement insurance benefits when he attained the age of 65, but his continued work as an engineer resulted in excess earnings which precluded the receipt of benefits through 1975. In January 1976, Fleming reported a reduction in his self-employment activities to the Social Security Administration and his belief that he was eligible for benefits. He received benefits from February through June of 1976 while he continued to do some engineering consulting work, including 21 hours in February and 56 hours in March of that year. In June 1976, Fleming notified the Social Security Administration that he had entered into an employment contract which would again make him ineligible to receive benefits, and from June 1 through December 1, 1976, pursuant to that contract, he received $2,000 per month for working four seven-hour days per week

as a consultant to a shirt manufacturing firm. From December 1, 1976 to December 31, 1977, Fleming continued to work for the same firm under a basic employment contract requiring one seven-hour work-day per week for $1,000 monthly in basic compensation. In addition to the agreed weekly work-days, Fleming occasionally worked additional days, for which he received compensation at a rate of approximately $200 per day.

There is no dispute that Fleming had excess earnings for both the 1976 and 1977 benefit years. However, pursuant to Section 203(f)(1)(E) of the Act, no part of excess earnings under the statutory formula would be chargeable to months in which he neither engaged in self-employment nor rendered services for wages beyond a specified amount. 42 U.S.C. § 403(f)(1)(E).

The Administrative Law Judge determined that Fleming had rendered substantial services, and hence was self-employed, in every month of 1976 and 1977 except May, 1976 (a month in which Fleming performed no services), and as such was not entitled to have received benefits for those months. In arriving at this determination, the Administrative Law Judge focused on Section 203 of the Act which provides, in relevant part, 42 U.S.C. § 403(f)(4):

(4) For purposes of clause (E) of paragraph (1)—

(A) An individual will be presumed, with respect to any month, to have been engaged in self-employment in such month until it is shown to the satisfaction of the Secretary that such individual rendered no substantial services in such month with respect to any trade or business . . . The Secretary shall by regulations prescribe the methods and criteria for determining whether or not an individual has rendered substantial services with respect to any trade or business.

Pursuant to that section, the Secretary has offered the following definition, 20 C.F.R. § 404.446:

(a) *General.* In general, the substantial services test is one of whether, in view of all the services rendered by the individual and the surrounding circumstances, the individual can reasonably be considered retired in the month in question. Even though an individual performs some services in a trade or business in a month, such services are not substantial where the evidence establishes to the satisfaction of the Administration that the individual may reasonably be considered retired in that month . . .

Section 404.447 of the Regulations, 20 C.F.R. § 404.447, provides that, in evaluating whether an individual's services are substantial, first consideration is to be given to the amount of time the self-employed individual devotes to all trades or businesses, and then specifies the sequence in which other factors are to be considered:

(a)(1) *Forty-five hours or less in a month devoted to trade or business.* Where the individual establishes that the time devoted to his trades and businesses during a calendar month was not more than 45 hours, the individual's services in that month are not considered substantial unless other factors (see paragraphs (b), (c), and (d) of this section), make such a finding unreasonable. For example, an individual who worked only 15 hours in a month might nevertheless be found to have rendered substantial services if he was managing a sizeable business or engaging in a highly skilled occupation. However, the services of less than 15 hours rendered in all trades and businesses during a calendar month are not substantial.

(2) *More than 45 hours in a month devoted to trades and businesses.* Where an individual devotes more than 45 hours to all trades and businesses during a calendar month, it will be found that the individual's services are substantial unless it is established that the individual could reasonably be considered retired in the month and, therefore, that such services were not, in fact, substantial.

(b) *Nature of services rendered.* Consideration is also given to the nature of the services rendered by the individual in

any case where a finding that the individual was retired would be unreasonable if based on time alone (see paragraph (a) of this section). The more highly skilled and valuable his services in self-employment are, the more likely the individual rendering such services could not reasonably be considered retired. The performance of services regularly also tends to show that the individual has not retired. Services are considered in relation to the technical and management needs of the business in which they are rendered. Thus, skilled services of a managerial or technical nature may be so important to the conduct of a sizeable business that such services would be substantial even though the time required to render the services is considerably less than 45 hours.

(c) *Comparison of services rendered before and after retirement.* Where consideration of the amount of time devoted to a trade or business (see paragraph (a) of this section) and the nature of services rendered (see paragraph (b) of this section) is not sufficient to establish whether an individual's services were substantial, consideration is given to the extent and nature of the services rendered by the individual before his "retirement," as compared with the services performed during the period in question . . .

(d) *Setting in which services performed.* Where consideration of the factors described in paragraphs (a), (b), and (c) of this section is not sufficient to establish that an individual's services in self-employment were or were not substantial, all other factors are considered . . .

Fleming claims that he did not perform substantial services for the period in question. He notes that (1) in each of the months he worked fewer than forty-five hours, and (2) the hours he worked were only one-fourth of his normal time.

The Administrative Law Judge did not rely on the number of hours worked by Fleming in determining that his services were substantial (except for the implicit finding, which I do not understand Fleming to contest, that they amounted to more than fifteen in each month). Rather, he held that Fleming was a "highly skilled professional" and thus his services were substantial because of the nature of the services rendered. 20 C.F.R. § 404.447(b). Fleming has argued that he had been advised by a representative of the Social Security Administration that if he worked fewer than forty-five hours in a month he would be entitled to receive benefits unless his occupation as a consultant could "be compared to that of doctors and surgeons, lecturers, etc. from the standpoint of either income or specialized experience."

■ While surgeons and lecturers would undoubtedly fall within the purview of Section 404.447(b) of the Regulations, there is no reason why that section should be so limited. Indeed, explicit reference is made to "skilled services of a managerial or technical nature . . . important to the conduct of a sizeable business." The record discloses that Fleming is a registered professional engineer and that he commands a $200 *per diem* fee because of qualifications gained in fifteen years as a management executive. These facts adequately support the finding of the Administrative Law Judge that despite a reduction in the number of hours in which he engaged in self-employment activities, Fleming was sufficiently occupied to be considered not retired within the meaning of the Social Security Act.

II

Section 204(a)(1) of the Act, 42 U.S.C. § 404(a)(1) permits the Secretary to recoup overpayments made in error. Section 204(b), however, provides that:

(b) In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery of the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchap-

ter or would be against equity and good conscience.

By regulation, the Secretary has elaborated upon the circumstances in which recoupment will thus be denied. "Without fault" is defined with reference to whether the recipient of the overpayment knew or should have known that the sum he received was incorrect. 20 C.F.R. § 404.507. To "defeat the purpose of [this subchapter]" means "to deprive a person of income required for ordinary and necessary living expenses." 20 CFR § 404.508. "Against equity and good conscience" refers to a situation where "an individual, because of a notice that such payment would be made or by reason of the incorrect payment, relinquished a valuable right . . . or changed his position for the worse . ." 20 C.F.R. § 404.509.

Plaintiff strongly asserts that before embarking on his employment schedule of one work-day per week, beginning in December 1976, he consulted with a "Miss Garcia of the Markley St. Norristown office" of the Social Security Administration and was advised by her that, under the course of activities he later in fact pursued, he would continue to be eligible for payments. Plaintiff argues that because of his reliance on her advice he was without fault and, therefore, recovery of the overpayment would be against equity and good conscience.

The Administrative Law Judge appears to have credited Fleming's story that he had relied on misinformation from a Social Security Administration employee and had thereby jeopardized his entitlement to retirement insurance benefits. The Administrative Law Judge applied the guidelines cited above, and found Fleming to have been without fault in creating and accepting the overpayment. The Administrative Law Judge went on to find, however, that because Fleming enjoyed substantial financial resources beyond the amount he received by way of overpayment, recovery would not defeat the purposes of the Act, and that because Fleming had relinquished no valuable right nor changed his position

for the worse in reliance on the mistaken payment, recoupment would not be against equity and good conscience.

Fleming points out that in certain situations "adjustment or recovery will be waived since it will be deemed such adjustment or recovery is 'against equity and good conscience.'" 20 C.F.R. § 404.512(a). One of those situations where this apparently *per se* rule of inequity will be applied is where an individual has been found without fault under 20 C.F.R. § 404.510(b). In relevant highlight, that section provides that

. . . an individual will be considered "without fault" in accepting a payment which is incorrect . . . because a deduction is required under section 203(b) . . . if it is shown that such . . . acceptance of the overpayment was due to one of the following circumstances:

.        .        .        .        .

(b) Reliance upon erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto

.        .        .

The Administrative Law Judge made no specific reference to this section, and indeed the Secretary has also ignored its possible impact in his motion papers. But, notwithstanding the seeming relevance of the section, plaintiff's reliance on it appears to be misplaced. The record is quite clear that the misinformation which Fleming claims to have received from Miss Garcia was the product of a conversation in the fall ("late October or early in November") of 1976. Fleming received his overpayments for the months of February, March, April and June of that year. It is thus difficult to conclude that his acceptance of those overpayments could be properly attributed to reliance on misstatements made many months later.

Fleming has also asserted at various points throughout the administrative and litigative process that he sold his house, purchased investment property, and entered into an employment contract in reliance on the advice he had received from Miss Garcia, and thus recovery would be against equity and good conscience. Although these are undoubtedly changes of position, the record is devoid of any evidence that these were changes for the worse. And, as the Administrative Law Judge noted, plaintiff has not relinquished a valuable right: though the record discloses that, following his conversation with Miss Garcia, plaintiff reduced the number of hours in which he was self-employed, the record does not show that he could have worked for some additional number of hours per week, or could have pursued some other available income source, had he not relied on her advice.

Perhaps more to the point, it is clear that plaintiff's real grievance is that, as a result of his conversation with Miss Garcia in the fall of 1976, he anticipated receiving benefits through 1977 and made his plans accordingly. But he never received any payments after his conversation with Miss Garcia and the Act does not provide that an individual shall receive benefits to which he is not entitled whether innocently and justifiably expected or otherwise. Rather, section 204(b), as expanded upon in the regulations, provides only that where an individual has received and accepted incorrect payments without fault on his part, and where he has relied on the sums received to his detriment, the Secretary may not reclaim what has in error been awarded. Plaintiff has not established a link between the overpayments he received for February, March, April and June of 1976, and any subsequent actions. Instead, he has focused his claim on actions taken in reliance on the misinformation he received from Miss Garcia many months after he received the overpayments. Though it is indeed unfortunate that plaintiff was inadvertently misled into believing that he would, in the future, be eligible to receive benefits, the Act provides no remedy.

The final decision of the Secretary will be affirmed.